13 CIV 158

JUDGE ENGELMAYER

RECEIVED MAR 08 2013 U.S.D.C. S.D.N.Y. CASHIERS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x

CHESAPEAKE ENERGY CORPORATION,

                Plaintiff,

v.

THE BANK OF NEW YORK MELLON
TRUST COMPANY, N.A.,

                Defendant.

---------------------------------------------------------------x

Civil Action No. 13-CV-_____ (___)

**COMPLAINT**

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff Chesapeake Energy Corporation ("Chesapeake" or "Plaintiff"), by its attorneys Jenner & Block LLP, for its Complaint against Defendant The Bank of New York Mellon Trust Company, N.A. ("BNY Mellon" or "Defendant"), alleges upon knowledge with respect to itself and its own acts, and upon information and belief with respect to all other matters, as follows:

## NATURE OF THE ACTION

1.     Chesapeake brings this declaratory judgment action against BNY Mellon to confirm that Chesapeake has the right to redeem $1.3 billion in principal amount of notes at par value pursuant to an indenture between Chesapeake and BNY Mellon so long as Chesapeake issues a notice to the noteholders on or before March 15, 2013. BNY Mellon serves as the indenture trustee with respect to the notes at issue, and Chesapeake has recently learned that BNY Mellon is operating under the misunderstanding that the deadline for issuing such notice has already passed. BNY Mellon's error appears to be based on a failure to distinguish the difference between a deadline for when notice must be given, and when the redemption date – the date on which payment is actually made to the noteholders – occurs.

2.      BNY Mellon has informed Chesapeake that it will not cooperate or otherwise participate in the redemption process that expressly permits Chesapeake to redeem the notes at par value. BNY Mellon's misreading of the unambiguous contractual provisions effectively prevents Chesapeake from redeeming the notes at par value, because the redemption process cannot be undertaken without the indenture trustee's participation.

3.      Time is of the essence, because if Chesapeake does not issue the notice to noteholders on or before March 15, 2013, Chesapeake will not be able to redeem the notes at par value. Under the terms of the indenture, any redemption that is the subject of a notice issued after March 15, 2013 would require Chesapeake to pay noteholders an additional payment equal to the present value of all future interest payments. This additional payment is commonly referred to as a "make whole." If Chesapeake were to issue a notice of redemption after March 15, 2013 for all of the applicable notes, Chesapeake would be required to make an additional $400 million make whole payment to the noteholders beyond the par value that would otherwise be due.

4.      Absent the requested declaratory relief from this Court, Chesapeake will have no remedy at law as a result of BNY Mellon's error. In the event Chesapeake is unable to timely exercise its contractual right to redeem the notes at par value, Chesapeake will not likely be able to recover damages from BNY Mellon in its capacity as indenture trustee in light of the standard protections and indemnifications provided to BNY Mellon under the indenture. In other words, this is not a typical contractual dispute where one party's misreading of an agreement can be remedied after the fact.

5.      Chesapeake is prepared to issue a notice of redemption by March 15, 2013 that complies with the indenture's requirements and provides for the redemption of the notes at par

value on the redemption date of May 13, 2013. In light of BNY Mellon's position that any redemption that occurs after March 15, 2013 will require Chesapeake to pay the $400 million make whole to the noteholders, Chesapeake is also requesting a declaration from this Court that the notice is effective to redeem the notes at par value, and if the notice is determined by this Court to not be timely for that purpose it will not be effective to redeem the notes. In this manner, the proposed relief will preserve the status quo by permitting Chesapeake to begin the redemption process without prejudicing either BNY Mellon or the noteholders.

## PARTIES

6. Plaintiff Chesapeake is a corporation incorporated under the laws of Oklahoma with its principal place of business in Oklahoma City. Chesapeake is a publicly traded independent oil and natural gas producer and the issuer of the 2019 Notes (as defined below).

7. Defendant BNY Mellon is a national banking association with its principal place of business in Los Angeles, California. BNY Mellon is the trustee for the 2019 Notes.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(a)(1) because Chesapeake and BNY Mellon are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

9. Venue is proper in this judicial district under 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to the claim occurred in this district.

## FACTUAL ALLEGATIONS

10. On February 16, 2012, Chesapeake completed a public offering of $1.3 billion of 6.775% Senior Notes Due 2019 (the "2019 Notes") pursuant to an Indenture, dated as of August 2, 2010, between Chesapeake, as Issuer, the Subsidiary Guarantors party thereto, as Guarantors, and BNY Mellon, as Trustee (the "Base Indenture"), as supplemented by a Ninth Supplemental

Indenture, dated February 16, 2012, between Chesapeake, as Issuer, the Subsidiary Guarantors party thereto, as Subsidiary Guarantors, and BNY Mellon, as Trustee (the "Supplemental Indenture"). The Base Indenture governs multiple series of notes that have been, or will be, issued pursuant to it, and the Supplemental Indenture applies only to the 2019 Notes. The Base Indenture is attached hereto as "Exhibit A," and the Supplemental Indenture is attached hereto as "Exhibit B."

11. Section 1.7(b) of the Supplemental Indenture provides Chesapeake the right to redeem the 2019 Notes at par value, plus accrued interest to the date of redemption, so long as Chesapeake gives the notice of redemption to holders of the 2019 Notes during the "Special Early Redemption Period" which began on November 15, 2012 and ends on March 15, 2013:

> (b) At any time from and including November 15, 2012 to and including March 15, 2013 (the "Special Early Redemption Period"), the Company, at its option, may redeem the Notes in whole or from time to time in part for a price equal to 100% of the principal amount of the Notes to be redeemed, plus accrued and unpaid interest on the Notes to be redeemed to the date of redemption; provided, however, that, immediately following any redemption of the Notes in part (and not in whole) pursuant to this Section 1.7(b), at least $250 million aggregate principal amount of the Notes remains outstanding. <u>The Company shall be permitted to exercise its option to redeem the Notes pursuant to this Section 1.7 so long as it gives the notice of redemption pursuant to Section 3.04 of the Base Indenture during the Special Early Redemption Period</u>. Any redemption pursuant to this Section 1.7(b) shall be conducted, to the extent applicable, pursuant to the provisions of Sections 3.02 through 3.07 of the Base Indenture.

Supplemental Indenture § 1.7(b) (emphasis added).

12. Section 1.7(b) of the Supplemental Indenture does not refer to when the redemption date is to occur. Instead, Section 1.7(b) governs when the notice of redemption is to be given pursuant to Section 3.04 of the Base Indenture. Moreover, and as set forth above, Section 1.7(b) of the Supplemental Indenture provides that any redemption pursuant to that section "shall be conducted, to the extent applicable, pursuant to the provisions of Section 3.02

through 3.07 of the Base Indenture." Supplemental Indenture § 1.7(b). Sections 3.02, 3.04, 3.05, and 3.06 of the Base Indenture are applicable to this action.[1]

13. Section 3.02 of the Base Indenture provides that Chesapeake is to provide an officer's certificate to the indenture trustee and the registrar for the notes at least 45 days but not more than 60 days before the redemption date (unless the indenture trustee consents to a shorter period). The officer's certificate must set forth the redemption date, the principal amount of notes to be redeemed, and the redemption price. Base Indenture § 3.02.

14. Section 3.04(a) of the Base Indenture provides that Chesapeake shall mail a notice of redemption "at least 30 days but not more than 60 days <u>before a redemption date</u>" to the holders of notes at their respective registered address. Id. § 3.04(a) (emphasis added).[2] Accordingly, the redemption date established pursuant to a notice cannot take place until at least thirty days after the notice has been mailed, and at Chesapeake's option, may take place as late as sixty days after such mailing. The information to be set forth in such notice includes "(1) <u>the redemption date</u>, (2) the redemption price, [and] (3) the aggregate principal amount of Securities being redeemed . . ." Id. (emphasis added). Section 3.04(b) provides that, upon Chesapeake's request, the indenture trustee shall deliver this notice so long as Chesapeake makes the request at least 15 days before the notice is to be given. Id. § 3.04(b).

---

[1] Sections 3.03 and 3.07 of the Base Indenture are inapplicable because Chesapeake seeks to redeem all of the 2019 Notes and those provisions govern redemptions of part, but not all, of a series of notes.
[2] Section 13.02 of the Base Indenture provides that, notwithstanding any other provision of the Base Indenture or the notes issued thereunder, where the Base Indenture provides for notice of any event, including any notice of redemption, and the notes are evidenced in a Global Security (as defined in the Base Indenture) registered in the name of the Depository (as defined in the Base Indenture), notice may be made to the Depository or its designee. As the 2019 Notes are evidenced by a Global Security, Chesapeake reserves the right to provide the notice of redemption to the Depository in accordance with Section 13.02 of the Base Indenture.

15. Section 3.05 of the Base Indenture governs the effect of a notice of redemption that is mailed to the noteholders. That section provides that "[o]nce notice of redemption is mailed in accordance with <u>Section 3.04</u>, Securities called for redemption become due and payable on the redemption date at the redemption price." Id. § 3.05 (emphasis in original). Upon the mailing of the notice of redemption, the redemption date becomes the new maturity date, and Chesapeake is irrevocably obligated to pay the noteholders the redemption price on that day. By virtue of this fact, the 2019 Notes are redeemed as a result of the mailing of such notice, even though the actual payment to the noteholders occurs at a later date (i.e., the redemption date).

16. Section 3.06 of the Base Indenture sets forth the actions that are to be taken on the redemption date. On that date, Chesapeake is obligated to deposit with the paying agent (which is BNY Mellon) no later than 11 a.m. New York City time funds sufficient to pay the aggregate redemption price for all of the notes to be redeemed, plus accrued and unpaid interest to, but not including, the redemption date. In the event Chesapeake fails to timely deposit such funds, interest will continue to accrue on the notes in accordance with their terms. Id. § 3.06.

17. On the morning of February 20, 2013, as part of Chesapeake's standard process prior to a redemption of notes, representatives of Chesapeake spoke by telephone with Sharon McGrath, a BNY Mellon vice president, regarding the proposed redemption pursuant to Section 1.7(b) of the Supplemental Indenture. Ms. McGrath indicated that she had consulted with BNY Mellon's counsel and that the notice of redemption pursuant to Section 1.7(b) of the Supplemental Indenture could be sent out on March 15. In addition, Ms. McGrath stated that BNY Mellon would deliver the notice to noteholders in accordance with Section 3.04(b) of the

Base Indenture, and that BNY Mellon would consent to shortening the 15-day notice period set forth in such section to two days.

18. Also on February 20, 2013, BNY Mellon received a letter from River Birch Capital LLC ("River Birch"), which BNY Mellon provided to Chesapeake at approximately 3 p.m. that day. In the letter, River Birch represented that it held $9 million in principal amount of the $1.3 billion of 2019 Notes (i.e., approximately 0.7% of the 2019 Notes), and set forth its position that the deadline for Chesapeake to issue a notice to redeem the 2019 Notes at par value pursuant to Section 1.7(b) of the Supplemental Indenture had already passed. A copy of the River Birch letter to BNY Mellon is attached hereto as "Exhibit C."

19. On the morning of February 22, 2013, representatives of Chesapeake spoke by telephone with Sharon McGrath and BNY Mellon's counsel in Manhattan regarding the proposed redemption, and the timing of the notice pursuant to Section 1.7(b) of the Supplemental Indenture. During this call, BNY Mellon and its counsel advised that BNY Mellon had changed its position, and stated that in its opinion Chesapeake no longer had the right to issue a notice of redemption pursuant to Section 1.7(b). BNY Mellon explained that, in light of its new position, BNY Mellon would not implement the proposed redemption. BNY Mellon reiterated this position in an additional call, on which its counsel participated, on February 28, 2013.

20. BNY Mellon's position, which upon information and belief was influenced by the River Birch letter, simply ignores Section 1.7(b)'s unambiguous direction that Chesapeake "shall be permitted to exercise its option to redeem the Notes pursuant to this Section 1.7 so long as it gives the notice of redemption pursuant to Section 3.04 of the Base Indenture during the Special Early Redemption Period." Supplemental Indenture § 1.7(b). BNY Mellon fails to recognize that Section 1.7(b) of the Supplemental Indenture governs only when the notice to redeem 2019

Notes at par value must be given, not when the redemption date occurs. As the provisions of the Base Indenture discussed above demonstrate, there is a definite schedule for redemption, beginning with providing the officer's certificate to the trustee pursuant to Section 3.02, and the mailing of the notice to the noteholders pursuant to Section 3.04. The redemption process ends with the payment of the redemption price, plus accrued interest, on the redemption date pursuant to Section 3.06.

21. BNY Mellon, upon information and belief, misreads Section 1.7(c) of the Supplemental Indenture to provide that any redemption date that occurs after March 15, 2013 would require Chesapeake to pay the make whole to the noteholders, even if the notice of redemption were given on or before March 15, 2013, contrary to the express language of Section 1.7(b). Section 1.7(c) provides that:

> (c) At any time after March 15, 2013 to the Maturity Date, the Company, at its option, may redeem the Notes in whole or from time to time in part for an amount equal to the Make-Whole Price plus accrued and unpaid interest to the date of redemption in accordance with the Form of Note.

Supplemental Indenture § 1.7(c). BNY Mellon's misreading is apparently based on interpreting the term "redeem" to refer to the redemption date. However, as Section 1.7(c) itself refers to the "date of redemption," such interpretation is illogical. Moreover, as Section 1.7(b) – the subsection immediately preceding Section 1.7(c) – addresses the time for sending a notice of redemption to redeem the 2019 Notes at par value, the only reasonable reading of Section 1.7(c) is that Section 1.7(c) governs redemptions where the notice of redemption is delivered after March 15, 2013.

22. Chesapeake is prepared to proceed with a redemption at par value of all of the 2019 Notes pursuant to Section 1.7(b) of the Supplemental Indenture, and has prepared a Notice of Special Early Redemption at Par (the "Notice of Special Early Redemption"), that is attached

8

hereto as Exhibit "D." The Notice of Special Early Redemption provides for the redemption of the 2019 Notes at par value, plus accrued interest to the redemption date of May 13, 2013, in accordance with the terms of the Base Indenture and the Supplemental Indenture. The Notice of Special Early Redemption expressly states that it does not apply to a redemption pursuant to Section 1.7(c) of the Supplemental Indenture, and does not obligate Chesapeake to pay the make whole to any noteholders. In accordance with Section 1.7(b) of the Supplemental Indenture, the Notice of Special Early Redemption must be mailed to the noteholders no later than March 15, 2013.

23. If Chesapeake were to issue the Notice of Special Early Redemption without first obtaining declaratory relief that such notice (i) is effective solely for a special early redemption of the 2019 Notes at par value, and (ii) shall be deemed null and void and shall not be effective in the event this Court does not issue a decision with respect to the timeliness and effectiveness of such notice prior to the May 13, 2013 redemption date, Chesapeake would be exposed to the risk that it would be obligated to pay the $400 million make whole to the noteholders on the redemption date. Granting the requested relief set forth in Claim II below will permit Chesapeake to begin the redemption process by mailing the Notice of Special Early Redemption, which will not prejudice either BNY Mellon or the noteholders.

24. These events have given rise to a justiciable controversy between the parties.

## CLAIMS FOR DECLARATORY RELIEF

## CLAIM I

### (Claim for Declaratory Judgment of Timeliness and Effectiveness of Notice)

25. Chesapeake incorporates and realleges in full the preceding paragraphs of this Complaint as if fully set forth herein.

26. Pursuant to 28 U.S.C. § 2201(a), Chesapeake seeks a declaration of this Court that the Notice of Special Early Redemption, upon being mailed on or prior to March 15, 2013 in accordance with the Base Indenture and the Supplemental Indenture, is timely and effective to redeem the 2019 Notes at 100% of principal amount plus accrued and unpaid interest to, but not including, the redemption date of May 13, 2013.

## CLAIM II

**(Claim for Declaratory Judgment of Enforceability of Notice of Redemption)**

27. Chesapeake incorporates and realleges in full paragraphs 1 through 24 of this Complaint as if fully set forth herein.

28. Pursuant to 28 U.S.C. § 2201(a), Chesapeake seeks a declaration that the Notice of Special Early Redemption is effective solely for a redemption of the 2019 Notes at 100% of principal amount plus accrued and unpaid interest to, but not including, the redemption date of May 13, 2013 pursuant to Section 1.7(b) of the Supplemental Indenture, and in the event that either (i) such notice is determined not to be timely for that purpose, or (ii) this Court has not issued a decision with respect to the declaratory relief sought in Claim I set forth above prior to the May 13, 2013 redemption date, then the Notice of Special Early Redemption shall be deemed null and void and shall not be effective to redeem the 2019 Notes.

29. Declaratory relief is appropriate because the parties have an actual justiciable controversy of sufficient immediacy to justify the relief sought.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that the Court enters judgment:

1. Declaring that the Notice of Special Early Redemption, upon being mailed on or prior to March 15, 2013 in accordance with the Base Indenture and the Supplemental Indenture,

is timely and effective to redeem the 2019 Notes at 100% of principal amount plus accrued and unpaid interest to, but not including, the redemption date of May 13, 2013.

  2. Declaring that the Notice of Special Early Redemption is effective solely for a redemption of the 2019 Notes at 100% of principal amount plus accrued and unpaid interest to, but not including, the redemption date of May 13, 2013 pursuant to Section 1.7(b) of the Supplemental Indenture, and in the event that either (i) such notice is determined not to be timely for that purpose, or (ii) this Court has not issued a decision with respect to the declaratory relief sought in Claim I of this Complaint prior to the May 13, 2013 redemption date, then the Notice of Special Early Redemption shall be deemed null and void and shall not be effective to redeem the 2019 Notes.

  3. Granting such other and further relief as the Court may deem just and proper.

Dated: March 8, 2013
   New York, New York

          CHESAPEAKE ENERGY CORPORATION

          By: _____

          Richard F. Ziegler (RZ0872)
          Stephen L. Ascher (SA7820)
          Marc B. Hankin (MH7001)
          Anne Cortina Perry (AP8504)

          JENNER & BLOCK LLP
          919 Third Avenue, 37th Floor
          New York, New York 10022-3908
          *Counsel for Plaintiff*