UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

13 CV 1582

————————————————————x
                         :

CHESAPEAKE ENERGY CORPORATION,    :

             Plaintiff,    :

                         :

            v.    :

                         :

THE BANK OF NEW YORK MELLON    :
TRUST COMPANY, N.A.,    :

             Defendant.    :

                         :

————————————————————x

JUDGE ENGELMAYER

Civil Action No. 13-Cv-_____ (____)

## DECLARATION OF DOMENIC J. DELL'OSSO, JR.

DOMENIC J. DELL'OSSO, JR. declares as follows:

1.    My name is Domenic J. Dell'Osso, Jr., and I am the Chief Financial Officer and an Executive Vice President of Plaintiff Chesapeake Energy Corporation ("Chesapeake").  I make this Declaration in Support of Chesapeake's application for a preliminary injunction enjoining Defendant The Bank of New York Mellon Trust Co., N.A. ("BNY Mellon") from treating the Notice of Special Early Redemption at Par that Chesapeake wishes to send to holders of its 6.775% Senior Notes Due 2019 ("2019 Notes") not later than March 15, 2013, as a Notice to redeem the 2019 Notes not at par, but at a "Make-Whole Price."

2.    Under the terms of the prospectus for the 2019 Notes dated February 13, 2012, made available to prospective investors, as well as the Base and Supplemental Indentures governing the 2019 Notes, Chesapeake may redeem some or all of the notes at par plus any accrued and unpaid interest up to the redemption date at any time during the four-month period from November 15, 2012, up to and including March 15, 2013, by giving notice of such

redemption at par during that time.  This is made clear in the descriptions in the prospectus of the "special early redemption" provision at pages S-7 and S-30, and in Section 1.7(b) of the Supplemental Indenture that applies to the 2019 Notes.  If Chesapeake provides notice of a Special Early Redemption after March 15, 2013, then Chesapeake may redeem the 2019 Notes only by redemption at the Make-Whole Price, which effectively includes the present value of the remaining interest that would be paid if the 2019 Notes were outstanding until their maturity date on March 15, 2019.

3.      Under the Make-Whole Price provision, the cost of redeeming the 2019 Notes would be approximately $400 million higher than the cost of redemption under the "special early redemption" provision.

4.      Chesapeake has intended for some time to exercise its special early redemption right on or shortly before March 15, 2013, consistent with the terms of the prospectus, Base Indenture, and Supplemental Indenture.  The company opted to wait until the end of the Special Early Redemption Period so it could access the capital markets to refinance its capital obligation under favorable conditions.  We expected that the conditions would be more favorable if we issued our notice of redemption toward the end of the four-month period because we anticipated announcing a substantial asset sale in late February 2013 (which we in fact did, on February 25, 2013) which likely lowers the interest rate at which our refinancing would be priced in the market; in addition, since our annual report on Form 10-K was anticipated to be publicly filed on March 1, 2013 (which it was), deferring the refinancing until after that filing would make that process simpler and more efficient.  By electing to redeem the 2019 Notes near the end of the Special Early Redemption Period rather than earlier in the period, Chesapeake is also benefitting

2

the holders of the 2019 Notes, who will receive the interest payments of the notes up to the date of redemption.

5.      Chesapeake has no intention or desire to redeem the 2019 Notes under the Make-Whole Price provision.  The company has no business reason to do so, and a requirement to pay an additional $400 million for no economic benefit would divert funding from the company's strategic objectives of developing its valuable oil and gas reserves and prevent Chesapeake from addressing important other business needs, all for the benefit of the company, including its noteholders and shareholders.  BNY Mellon has refused to provide Chesapeake the assurance we have requested that it will treat our proposed "Notice of Special Early Redemption at Par" according to its terms.  As a result, if Chesapeake gives that notice by March 15, 2013, it will be compelled to accept the risk that BNY Mellon may choose to treat it as a notice of redemption under the Make-Whole Price provision of the indenture, unless the Court grants the declaratory relief Chesapeake seeks in this action that its proposed Notice of Special Early Redemption at Par is timely under the Special Early Redemption provision thereby barring BNY Mellon from treating the notice Chesapeake has issued on March 15 as calling for redemption at the Make-Whole Price.

6.      The risk that BNY Mellon will act in that manner with respect to our proposed March 15 Notice of Special Early Redemption at Par is sufficiently grave that unless the Court grants the emergency relief Chesapeake seeks barring BNY Mellon from acting in that manner, Chesapeake will be compelled not to seek to redeem the 2019 Notes at this time at all.  In other words, even if Chesapeake is correct that a March 15 notice is timely under the Special Early Redemption provision, Chesapeake will be unable to press its declaratory relief claim to obtain that ruling because it will be unable to issue the necessary March 15 notice.  If Chesapeake

issues the notice but BNY Mellon thereafter prevails in persuading the Court that the notice is untimely for purposes of redemption at par and then treats the notice as one for redemption at a Make-Whole Price, Chesapeake will have ended up redeeming 2019 Notes at a time and at a price that makes no sense for it.   Chesapeake is unable to take that risk.   Accordingly, the relief we seek is necessary to preserve both (a) Chesapeake's ability to seek declaratory relief as to the timeliness and effectiveness of its proposed March 15 notice, and (b) Chesapeake's ability to exercise its rights under the Special Early Redemption provision in the event the Court agrees that a notice issued by March 15, 2013 is timely under that provision.

7.     Absent an injunction preventing BNY Mellon from treating a notice of redemption made on or before March 15, 2013, as a notice of redemption under the Make-Whole Price provision, Chesapeake cannot send out the notice and bear the risk that it will be misconstrued as a notice of a redemption under the Make-Whole Price provision.  Given the severe and irreparable consequences to Chesapeake if it is deemed to have issued a notice of redemption under the Make-Whole Price provision, Chesapeake is now effectively unable to send the notice it wishes to make.


I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct.  Executed at Oklahoma City, Oklahoma on March 8, 2013.


By:  _____
        Domenic J. Dell'Osso, Jr.