UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
──────────────────────────────────────x
                                                                                           :

CHESAPEAKE ENERGY CORPORATION,     :

                               Plaintiff,          :

                         v.                       :     Case No. 1:13-cv-1582-PAE

THE BANK OF NEW YORK MELLON         :
TRUST COMPANY, N.A.,                   :

                               Defendant.       :
──────────────────────────────────────x

## MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND RELATED NONTAXABLE EXPENSES

Plaintiff Chesapeake Energy Corporation ("Chesapeake") submits this memorandum in support of its motion for attorneys' fees and related nontaxable expenses, pursuant to this Court's May 21, 2013 Order, which extended Chesapeake's deadline to file its motion to June 5, 2013, but suggested that Chesapeake file a preliminary motion on May 22, 2013 to avoid any claim that the Court did not have the power to extend that deadline. May 21 Order at 3. Chesapeake will serve additional papers in support of its motion, on a schedule to be set by the Court. Those papers will also address BNY Mellon's request for indemnification pursuant to Section 7.07 of the Base Indenture, because that request should be denied for essentially the same reasons that Chesapeake's request for fees should be granted.

## ARGUMENT

Chesapeake seeks attorneys' fees pursuant to Section 6.11 of the Base Indenture, which provides in relevant part that:

> [A] court in its discretion may require the filing by any party litigant in the suit of an undertaking to pay the costs of the suit, and the court in its discretion may assess

reasonable costs, including reasonable attorneys' fees and expenses, against any party litigant in the suit, having due regard to the merits and good faith of the claims or defenses made by the party litigant.  This Section 6.11 does not apply to a suit by the Trustee, a suit by a Holder pursuant to Section 6.07, or a suit by Holders of more than 10% in principal amount of the then outstanding Securities of any series. . . .[1]

In this case, "having due regard to the merits and good faith" of BNY Mellon's defenses, the Court in its discretion should order BNY Mellon to reimburse Chesapeake for Chesapeake's attorneys' fees and expenses, in an amount to be determined based on a more complete record. *See Semi-Tech Litig., LLC v. Bankers Trust Co.*, No. 02 Civ. 0711 (LAK), 2008 WL 4467252, at *1 (S.D.N.Y. Oct. 6, 2008), *aff'd* 300 F. App'x 123, 2008 WL 5083112 (2d Cir. 2008) (summary order).  Chesapeake intends to prove that important aspects of BNY Mellon's conduct in this litigation were inappropriate -- strategically, procedurally, and substantively.  Those aspects of BNY Mellon's conduct of this litigation warrant rejection of its claim under Section 7.07 of the indenture for indemnification for the fees and expenses it incurred.  For the same reasons, BNY's conduct of the litigation also warrants shifting to it the fees and non-taxable expenses incurred by Chesapeake, the prevailing party, under Section 6.11.  Among other inappropriate conduct, BNY Mellon engaged in the following:

- Strategically, BNY Mellon made the unusual choice to litigate this case as if it were vindicating its own economic interests when it had none.  After learning that Chesapeake and one or more note holders had divergent interpretations of Section 1.7 of the Supplemental Indenture, BNY Mellon could have initiated an interpleader proceeding to enable the matter to be litigated between Chesapeake and the interested note holders. Alternatively, after certain note holders intervened, BNY Mellon could have taken no position on the merits of the suit and allowed the note holders to take the laboring oar in

---

[1] The Base Indenture is in the trial record as Plaintiff's Exhibit 6.

the case. These alternative procedural routes would have required the note holders either to pay their own counsel or to indemnify BNY Mellon under Sections 6.06(3) or 7.01(e) of the Base Indenture. Instead, BNY Mellon hired counsel that previously represented only the note holders, and aggressively pursued the note holders' position as its own, even though BNY Mellon had no financial interest in the case. BNY Mellon now claims that because it conducted the lawsuit, its expenses should be reimbursed by Chesapeake. This claim turns the provisions of the Base Indenture on their head. If the note holders were not willing to litigate the issue at their own expense, then this litigation could likely have been avoided or curtailed.

- <u>Procedurally</u>, BNY Mellon failed to conduct a proper legal or factual investigation before taking the position that it would not permit Chesapeake to consummate a Special Early Redemption. For example, BNY Mellon did not apply the standard canons of construction in interpreting Section 1.7 of the Supplemental Indenture, but instead advanced a reading that the Court has determined was "tortured" and "incoherent." Moreover, even if BNY could have concluded in good faith that that provision was ambiguous, BNY Mellon was then obliged to conduct a good-faith investigation into the intent of the drafters. BNY Mellon either failed to do so, or disregarded the intent of the drafters without justification. BNY Mellon made other procedural decisions that aggravated the expense of the litigation process, including hiring three experts to give opinions on matters that were undisputed, irrelevant, or both.

- <u>Substantively</u>, BNY Mellon has taken unreasonable positions that significantly increased the cost of the litigation. For example, for weeks BNY Mellon refused to agree that late notice would not inadvertently trigger a make-whole redemption. BNY Mellon's

3

baseless position necessitated the filing of Chesapeake's Order to Show Cause seeking preliminary injunctive relief. BNY Mellon then persisted in its position even after the Court's ruling that its position was "overwhelmingly" unlikely to succeed, and conditioned its subsequent change in position in a manner that required Chesapeake to file an otherwise avoidable motion for judgment on the pleadings on Claim 2 of the Complaint.

Chesapeake respectfully requests limited discovery on the issues raised by these claims. For example, Chesapeake will seek narrow and targeted discovery to establish: (a) whether any note holders indemnified BNY Mellon or directed the litigation in any respect, and, if so, pursuant to what arrangement; (b) what legal and factual investigation BNY Mellon conducted before concluding that it would not permit the Special Early Redemption and that it would create the specter of an involuntary make-whole redemption; and (c) that BNY Mellon departed from the industry norm in choosing to litigate the matter as if it had an economic stake in the outcome, and the reasons for that departure. Such discovery is appropriate since the respective applications for attorney's fees turn on the reasonableness and good faith of BNY Mellon's positions and conduct.

In considering Chesapeake's claim for reimbursement, we believe that the Court will necessarily be required to decide the closely related issues raised by BNY Mellon's claim for indemnification. Section 7.07 of the Base Indenture states in part that:

> The Company agrees to indemnify the Trustee against any loss, liability, claim, damage or expenses incurred by it arising out of or in connection with the acceptance and administration of the trust and its duties hereunder as Trustee, Registrar and/or paying Agent, including the costs and expenses of enforcing this Indenture against the Company (including with respect to this Section 7.07) and of defending itself against any claim or

4

> liability in connection with the exercise or performance of any of its powers or duties hereunder.

However, the next paragraph of Section 7.07 relieves Chesapeake of the indemnification obligation where there is negligence or willful misconduct: "The Company shall not be obligated to reimburse any expense or indemnify against any loss, liability, claim or damage incurred by the Trustee determined to have been caused by the Trustee's own negligence or willful misconduct."

Although a trustee would ordinarily be entitled to indemnification for the costs of resolving a disagreement about the terms of the indenture pursuant to Section 7.07 of the Base Indenture, BNY Mellon's conduct in this litigation went far beyond the limited work that was necessary to resolve a potential ambiguity, and demonstrated negligence or willful misconduct sufficient to strip BNY Mellon of its indemnification right.

## CONCLUSION

For the foregoing reasons, Chesapeake respectfully requests that this Court award it its attorneys' fees pursuant to the terms of the Base Indenture and Federal Rule of Civil Procedure 54(d).

Dated: May 22, 2013
       New York, New York

CHESAPEAKE ENERGY CORPORATION

By: _____

Richard F. Ziegler (RZ0872)
Stephen L. Ascher (SA 7820)
Anne Cortina Perry (AP8405)

JENNER & BLOCK LLP
919 Third Avenue, 37th Floor
New York, New York 10022-3908
(212) 891-1680
*Counsel for Plaintiff*

6