919 THIRD AVENUE  NEW YORK  NEW YORK  10022-3908                           JENNER & BLOCK LLP

VIA ECF

July 20, 2015

Richard F. Ziegler
Partner
Tel +1 212 891 1680
Fax +1 212 909 0854
rziegler@jenner.com

Honorable Paul A. Engelmayer
United States District Judge
United States District Court
Southern District of New York
40 Foley Square
New York, NY 10007

Re:   *Chesapeake Energy Corp. v. The Bank of New York Mellon Trust Company, N.A.*,
      No. 13-CIV-1582 (PAE)

Dear Judge Engelmayer:

On behalf of Plaintiff Chesapeake Energy Corporation ("Chesapeake"), this letter makes two requests of the Court concerning the amount and form of security that Chesapeake will be required to post pursuant to Rule 62(d), Fed. R. Civ. P., to stay execution of the judgment during the pendency of Chesapeake's impending appeal. Chesapeake intends to file its notice of appeal and post the required security on or before July 27, the date after which the 14-day initial stay of execution provided by Rule 62(a) will expire. *See* Fed. R. Civ. P. 62(a). We respectfully request that the Court act on these requests in advance of that deadline.

We raised both requests with counsel for BNYM over the weekend and have been advised that it is considering its position; we are submitting this letter now because of the urgent deadlines.

First, with respect to the amount of the security, Chesapeake respectfully requests that the Court direct the judgments clerk to accept security in the amount of 101% of the judgment rather than the 111% that the clerk has informed us is an unwritten guideline that will be applied absent contrary direction from this Court.[1] The additional 1% Chesapeake proposes will be sufficient to pay post-judgment interest for nearly four years of appellate proceedings if the judgment is affirmed, as well as any costs that could be awarded against Chesapeake;[2] accordingly the

---

[1] The amended judgment is $438,717,561.67. One-percent of such amount is $4,387,175.62. Thus, Chesapeake is requesting permission to post security in the amount of $443,104,737.29.

[2] Applied to the amended judgment, three years of post-judgment interest at 0.26%, compounded annually, would total $3,430,901.88, leaving $956,273.73 for additional interest if the

July 20, 2015
Page 2

proposed amount of security fully serves the purpose of Rule 62(d), Fed. R. Civ. P. *See In re Nassau County Strip Search Cases*, 783 F.3d 414, 417 (2d Cir. 2015) (holding that "[t]he purpose of the rule is to ensure that the prevailing party will recover in full, if the decision should be affirmed, while protecting the other side against the risk that payment cannot be recouped if the decision should be reversed") (citations omitted); *Bank of New York Mellon v. Worth*, No. 3:13–cv–1489, 2015 WL 1780719, at *2 (D. Conn. Apr. 20, 2015) (noting that a bond generally includes the amount of the judgment, anticipated post-judgment interest, and costs).

Chesapeake understands that the 111% guideline was established at a time when post-judgment interest rates were substantially higher than they are today. As applied to last week's judgment, for which the post-judgment interest rate is 0.26%,[3] the 11% additional security would total more than $48 million and would be sufficient to pay post-judgment interest for more than 40 years of appellate proceedings. Consequently, Chesapeake requests that the Court exercise its discretion to avoid the needless cost and other financial burden on Chesapeake that requiring security equal to 111% of the judgment would impose. *See In re Nassau County Strip Search Cases*, 783 F.3d at 417 (reaffirming Second Circuit precedent that a district court judge may exercise discretion in applying the bond requirement to avoid, among other things, imposing needless cost on the appellant); *U2 Home Entm't, Inc. v. Lai Ying Music & Video Trading, Inc.*, No. 04 Civ. 1233,

---

proceedings continue for another nine or ten months into a fourth year, and to satisfy any award of costs.

[3] 28 U.S.C. § 1961 provides that "interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment," compounded annually. The average 1-year constant maturity Treasury yield for the week of July 6-10 is 0.26%. The rates as published are available at http://www.federalreserve.gov/releases/h15/current/. This federal statutory rate supplies the post judgment interest rate on all federal court judgments except those that are subject to an explicit agreement by the parties that a different rate should apply to the judgment. The Base Indenture's provision that was sufficient to supply a contractual rate for prejudgment interest, Section 3.06, does not address judgment debt and consequently the federal statutory rate applies. *See, e.g., FCS Advisors, Inc. v. Fair Fin. Co.*, 605 F.3d 144, 147 (2d Cir. 2010) (requiring "'clear, unambiguous and unequivocal' language expressing an intent that a particular interest rate apply to *judgments* or *judgment debts*") (quoting *Westinghouse Credit Com. v. D'Urso*, 371 F.3d 96, 102 (2d Cir. 2004) (emphasis in original); *see also Chesapeake Fifth Ave. Partners, LLC v. Somerset Walnut Hill, LLC*, No. 3:08cv764, 2009 WL 1298217, at *2–3 (E.D. Va. May 8, 2009) (finding contractual language sufficiently unambiguous to authorize non-statutory rate of post-judgment interest where it provided "[i]f judgment is entered against [Somerset] on this Note, the amount of the judgment so entered shall bear interest at the Default Rate as of the date of entry of the judgment") (applying New York law).

July 20, 2015
Page 3

2007 WL 747794, at *2 (S.D.N.Y Mar. 12, 2007) (authorizing a Rule 62(d) stay with a bond equal to one tenth of the judgment).

Second, with respect to the form of security, we request that the Court authorize the judgment clerk to accept either an irrevocable letter of credit from an acceptable financial institution in lieu of a surety bond, or some combination of the two methods, in any event in the total amount of 101% of the judgment.

Although Chesapeake has not yet determined the form of security it will seek to post, Chesapeake makes this request now in view of the limited time available to Chesapeake under the rules to post the required security to stay execution. Letters of credit are typically more cost-efficient than surety bonds, and it is common for companies in Chesapeake's circumstances to be authorized to substitute letters of credit for a bond. The Second Circuit has observed that "[a] district court may, in its discretion, grant a stay without requiring the posting of a bond if the appellant provides an acceptable alternative means of securing the judgment," *F.D.I.C. v. Ann–High Associates*, No. 97-6095, 1997 WL 1877195, at *1 (2d Cir. 1997), reaffirmed by *In re Nassau County Strip Search Cases*, 783 F.3d at 417 (2d Cir. 2015), and has endorsed the use of a letter of credit. *See, e.g., Trans World Airlines, Inc. v. Hughes*, 515 F.2d 173, 175 (2d Cir. 1975) (noting district court allowed letter of credit because size of the judgment would have made bond impracticable); *accord, Gaus v. Conair Corp.*, No. 94 Civ. 5693, 2003 WL 542652, at *2 (S.D.N.Y. Feb. 14, 2003) (allowing party to submit either supersedeas bond or irrevocable letter of credit).

Thank you for the Court's prompt attention to these matters.

Respectfully submitted,

Richard F. Ziegler

cc:  Judgments Clerk (by email)

   Lawrence S. Robbins (by email)
   Paul T. Weinstein (by email)
   *Counsel for Defendant Bank of New York Mellon Trust Company, N.A.*